Rolfe vs. Rolfe.

|  |  |
|---|---|
| 15 | 451 |
| 94 | 276 |
| 15 | 451 |
| 126 | 682 |

No. 63.—RICHARD W. ROLFE, plaintiff in error, *vs.* LUCIUS ROLFE, defendant in error.

[1.] In cases in which the annual profits of an orphan's estate, are not sufficient for his education and maintenance, it is the duty of the guardian—

1st. To report that fact promptly to the Court of Ordinary.

2d. To abstain from applying any part of the estate to the use of the orphan, except such as may be necessary for his mere maintenance, until the Court, after receiving the report, has refused or failed to bind out the orphan, if it should refuse or fail so to do ; in which case, the guardian, from thenceforth, need no longer abstain from applying the estate to the education and maintenance of the orphan.

Rolfe *vs.* Rolfe.

3d. And it is the duty of the Court of Ordinary, on being informed of the insufficiency of the estate, .promptly to bind out the orphan, in terms of the Act of 1799 on the subject, if that be possible.

[2.] If, *before* the appointment of a guardian, debts for necessaries be incurred by an infant, the guardian, after his appointment, must pay them out of the infant's estate, even though that estate be so small, that the annual profits of it may not be sufficient for the infant's education and maintenance.

[3.] The allowance to a guardian, of his account, by the Court of Ordinary, is *prima facie* evidence of the existence of all of the facts, the existence of which is necessary to make the allowance right. Such evidence is subject to be rebutted.

In Equity, in Talbot Superior Court. Tried before Judge 'CRAWFORD, March Term, 1854.

This suit was by Lucius Rolfe against R. W. Rolfe, his guardian, for an account, as such. The defence was, that his estate was very small, and that the whole of it had been necessarily expended in the maintenance and education of the ward, which appeared by the returns, as allowed by the Court of Ordinary; a part of these disbursements were for debts existing at the time the guardian was appointed.

The Court charged the Jury, that the general and strict rule of law was, that a guardian was not allowed to break in upon the capital of his ward for maintenance and education; and that, when the income was insufficient for this purpose, the law required that the ward should be bound out as an apprentice. But, in extreme and extraordinary cases, it would be allowed the guardian to consume a part, or all, of the ward's capital; and one was, when the ward manifested such brilliancy of intellect or genius, as to give much promise of usefulness or distinction. Another was, when the ward was infirm and unable to labor, and no person would receive him as an apprentice.

Counsel for the guardian requested the Court to charge, that it was the duty of the Court of Ordinary, and not of the guardian, to bind out the orphan. The Court charged as requested, adding, that it was the duty of the guardian to report to the Court, the fact of the insufficiency of the income to support the ward.

Rolfe *vs.* Rolfe.

They farther requested the Court to charge, that under the 4th section of the Act of 1799, the Ordinary had *discretionary* authority, as to the binding out of orphans, in cases where the annual income of the estate is insufficient for the education and maintenance of the ward. This charge the Court refused to give.

. They farther requested the Court to charge, that the allowance and approval of the disbursement of defendant, as guardian, by the Ordinary, was *prima facie* evidence of their reasonableness and propriety ; and that the burthen was on complainant to prove to the contrary ; and in the absence of such proof, they must find in conformity with such returns. The Court refused so to charge, as a whole, but charged that such returns, approved by the Ordinary, were, *prima facie*, correct; yet, if, on looking into the pleading and proof, they should find these disbursements were not confined to the annual profits or income, but exceeded the same, then, they would inquire whether any extraordinary circumstances were shown in the case, to justify such excess, as already charged.

To all of which charges and refusals to charge, defendant below excepted, and error was assigned thereon, in this Court.

L. B. SMITH; B. HILL, for plaintiff in error.

E. H. WORRILL, for defendant.

*By the Court.*—BENNING, J. delivering the opinion.

A part of the fourth section of the Act of 1799, "for the better protection and security of orphans and their estates", is in these words : "All guardians shall be allowed, in their account, to charge all reasonable disbursements and expenses, suitable to the circumstances of the orphan committed to his care. And where it shall appear to said Court that the annual profits of the estate of any orphan is not sufficient for the education and maintenance of such orphan, it shall be the duty of such Court, forthwith to bind out such orphan, for the whole or

Rolfe *vs.* Rolfe.

such part of the time of such orphan's minority, as to them shall seem best; and the person to whom such orphan shall be bound, shall undertake to clothe and maintain such apprentice, in such manner as said Court may direct, and shall cause such apprentice to be taught to read and write the English language, and the usual rules of arithmetic". (*Cobb's Dig.* 312.)

Under these words, what is the duty of the Inferior Court? and what is the duty of the guardian, in cases in which the annual profits of the orphan's estate, are not sufficient for his education and maintenance?

As to the duty of the Court, the language is plain and peremptory. "It shall be *the duty* of such Court, forthwith *to bind* out" the orphan; not to bind him out or not, at its discretion.

It seems to us, that the Court has no discretion. It must bind out the orphan, if that be possible. This is its duty.

What is the duty of the guardian? To make it "*appear*" to the Court, "that the annual profits" are "not sufficient for the education and maintenance" of the orphan; so that the Court may know that a case exists, requiring it to act. This is such a fact, that hardly anybody can know of its existence, except the guardian. And the words quoted, seem to assume, as a matter of course, that it is a fact to be communicated to the Court by the guardian. "All guardians shall be allowed, in their *account*, to charge all reasonable disbursements and expenses, suitable to the circumstances of the orphan committed to his care. *And*, where it shall appear to the Court that the annual profits", &c.—how appear? from the "*account*" rendered by the guardian, most certainly. And these words were, doubtless, right in this assumption; for it had been declared in the next preceding section of the Act, "to be the duty of all such guardians, executors and administrators, to render a full and correct account of the *state and condition* of such estates as they might "severally have in their possession, to the first term of the Inferior Court", &c. and a full and correct account of the estate, and condition of such estates could not be, unless it contained a statement of "*annual profits*".

Rolfe *vs.* Rolfe.

So, it was thus made the duty of the guardian to communicate to the Court, the *amount* of annual profits.

By the law, generally, it is the duty of the guardian to *educate and maintain* the ward, and over this duty the Inferior Court has supervision. (*Cobb's Dig.* 312, 321.) For the performance of this duty, therefore, the guardian must account to the Court. This he cannot do, without, at the same time, showing whether the annual profits of the estate, are *sufficient* or *insufficient* for the education and maintenance of the orphan.

All which considered, it may be safely said, that it is the guardian upon whom the duty is imposed, to make it "appear" to the Inferior Court, that the annual profits of the orphan's estate, are not sufficient for his education and maintenance, if that be the fact.

The object of this fourth section of the Act plainly was, if possible, to procure for the orphan education and maintenance, and yet, at the same time, preserve for him, intact, his little estate ; for the person to whom he is to be bound, is to undertake to clothe and maintain him, in such manner as the Court may direct, and is to teach him to read and write English, and the usual rules of arithmetic.

This object would be defeated, if the guardian, instead of being required to report to the Court the insufficiency of the annual profits of the estate, for the orphan's education and maintenance, to the end that the Court might bind him out, should be allowed to consume such estate in his education and maintenance, before making any such report.

It follows, that it is not only the duty of the guardian to report to the Court, the insufficiency of the annual profits, but also, his duty to leave such profits, as well as the body of the estate, untouched, until the Court, after receiving the report, fails or refuses to bind out the orphan. If, after receiving this report, the Court fails or refuses to bind out the orphan, then, the guardian may apply the orphan's estate, however small, to his maintenance and education, according the exigency of the case. For, in all events, the orphan must be

maintained—educated if possible—must live. And this reason would doubtless justify the guardian, in applying a portion of the orphan's estate to his maintenance, for a reasonable time, *preceding* the guardian's report of insufficiency to the Court, and for the time taken by the Court, for acting on the report.

[1.] It appears, therefore, that in cases in which the annual profits of the estate of an orphan are not sufficient for his education and maintenace, it is the duty of his guardian—

1st. To report that fact promptly to the Court of Ordinary.

2d. To abstain from applying any part of the estate to the use of the orphan, except such as may be necessary for his mere maintenance, until the Court, after receiving the report, has failed or refused to bind out the orphan, if it should fail or refuse so to do ; in which case, the guardian, from thenceforth, need no longer abstain from applying the estate of the orphan, to his education and maintenance.

3d. And the duty of the Court of Ordinary, on receiving the report of insufficiency, promptly to bind out the orphan, on the terms prescribed by the Act, if that be possible.

[2.] So much for the duties of the guardian, and of the Inferior Court, respectively, under the Act aforesaid, of 1799. But in this case, the duties of guardian and Court, are not *all* regulated by that Act. The orphan had incurred a part of the debts, or items contained in the guardian's account, which was allowed him by the Court, *before* the guardian's appointment. These items were for the board and education of the orphan; that is, were for *necessaries* supplied by strangers to the orphan, for *education* is a necessary. (*Macpherson on Infants*, 498. *Coke Litt.*) And, for necessaries, an infant, although he may have no guardian, may bind himself; that is to say, a debt for necessaries, is good against an infant's estate. These debts having been contracted before the guardian's appointment, he was not in fault for not having interposed action, under the Statute of 1799, to prevent their being contracted. In such a case, the debts must stand as if that Act did not exist ; and therefore, they must stand good against the infant's

estate, being for necessaries supplied to the infant. The guardian, therefore, might well pay them; and if he did pay them, the Inferior Court could not but approve the payment. As to *these* items of debt, the case is not within the Act of 1799.

[3.] In this case, the account of the guardian had been allowed by the Inferior Court. That allowance, was *prima facie* evidence of the existence of all the facts necessary to make the allowance right—for instance, of the existence of the facts that the guardian, before the origin of those items in the account, which are of a date *subsequent* to his appointment, had informed the Inferior Court of the insufficiency of the annual profits, &c. and that the Court, after this, had refused or failed to bind out the orphan.

Such *prima facie* evidence is, however, subject to be rebutted, by proof that the facts presumed from it to exist, or to have existed, really do not exist, or have not existed.

All which things being so, it is manifest that the Court below committed some errors, and also what those errors are.

Wherefore, there ought to be a re-hearing of the case.