## DOWLING *vs.* FEELEY *et al.*

72 557
85 737
72 557
93 482
72 557
f110 849
72 557
e124 175

1. A trustee can make no profit for himself out of the trust estate. If he risk the trust funds and lose, he is compelled to account for their full value; if he is successful, he is required to pay what he gains to the beneficiary of the fund embarked in the enterprise. This rule applies not only to trustees *eo nomine,* but to all persons sustaining confidential relations to others, such as executors and administrators, guardians, agents, officers, partners, etc.; and there is no relaxation of this rule as against the sureties on an administrator's bond, where he has violated it.

   (a.) An administrator or other trustee cannot appropriate to his own

Dowling *vs.* Feeley *et al.*

use any supposed excess in the price for which property entrusted to him may have been sold above its value.

(*b.*) Charges based on hypotheses not founded on the evidence should not be given.

2. A guardian is allowed all reasonable expenses and disbursements suitable to the circumstances of his ward, but the expenses of maintenance and education should not exceed the annual profits of the estate, except by the approval of the ordinary previously given.

(*a.*) It seems that where the trustee has acted fairly and properly without the consent of the ordinary previously given, and where prompt and regular annual returns of his actions in that behalf have been made, the ordinary, by his approval of such returns, may ratify the action. But where an administrator has held an estate in his hands, has failed to wind it up, has not made regular returns, nor has shown proper vouchers with those which he has made, and has sought to act as guardian without any appointment therefor, he cannot relieve himself from liability for the *corpus* by claiming to have absorbed not only the entire income, but also the *corpus* of the property in the support and education of the minor beneficiaries.

3. Regular returns received and approved by the ordinary are only *prima facie* evidence in favor of the administrator or his sureties.

(*a.*) Where returns were made out with a view of presenting them, but they were never received or approved by the ordinary, and some of them were not even verified, while they may be used as admissions against such administrator or his sureties, they are not evidence in favor of the defendants, unless their correctness is satisfactorily proved by other testimony.

(*b.*) The character and quality of the board furnished and the clothing, etc., supplied may be proved by one acquainted with the worth of them at the various times when furnished, but the amounts allowed as credits on this account must not exceed the annual income of the property during the minority of the beneficiary.

(*c.*) The value of services rendered by such beneficiary to the administrator or his wife should be deducted from the charges for supplies, and if all the income was not thus consumed, the excess should be accounted for.

4. In a suit by a beneficiary of the estate against the securities of the administrator, although he admitted, when on the stand as a witness, that he was willing to allow the defendants such an amount as he would have been willing to have allowed the administrator for support, maintenance and education, and was willing to allow what was reasonable and proper for what had been furnished, but thought the services rendered by him to the administrator and

his family were worth his food and lodging, he did not thereby express a willingness to pay the demand as set up by the defendant.

5. When an admission is given in evidence, it is the right of the opposite party to have the whole of it, and everything connected therewith, shown. But where a plaintiff offered in evidence an incomplete return of an administrator as an admission, and it had folded in it various receipts, accounts, etc., referred to as vouchers, he was not compelled to put them in evidence along with the returns. That was the right of the defendants, if they could show that the enclosed were either a part of the admission or connected therewith.

6. There was no error in admitting testimony to sustain the credit of witnesses for either side, whose veracity had been assailed in any of the modes pointed out by the Code.

7. The other questions made by the record are not decided.

April 25, 1884.

Administrators and Executors. Guardian and Ward. Trusts. Charge of Court. Minors. Evidence. Admissions. Witness. Before Judge HARDEN. City Court of Savannah. November Term, 1883.

Reported in the decision.

DENMARK & ADAMS, for plaintiff in error.

CHISHOLM & ERWIN; R. R. RICHARDS, for defendants.

HALL, Justice.

Patrick Dowling died intestate, on the 14th day of December, 1866, leaving a widow, who survived him only a few days, and three minor children, the eldest of whom is the present plaintiff, who was, at the death of his parents, only about five years old. John Daley administered on the estate, and qualified by taking the oath and giving the bond required by law, on the first day of April, 1867. The bulk of the estate was in a drayage business with one Moran, who was the surviving partner of the intestate. This interest seems to have been sold to John W. Reilly for the sum of $7,992, who gave his notes therefor, and

they went into the hands of the administrator. From the scattering returns of the administrator and other written admissions of his in evidence, it is pretty clear that he realized every dollar of the principal of this note, together with the interest accruing thereon annually. No inventory or appraisement of the estate appears to have been made or returned. There are only two annual returns made out and sworn to, one in 1868, the other in 1870. Other statements in the handwriting of the administrator, some of them not sworn to, and none of them received or put on file in the court of ordinary, though a portion of them were found in the ordinary's office, but without the approval of that officer, were put in evidence by the plaintiff as admissions on the part of the administrator, to fix him with waste and mismanagement of the estate. This entire administration, from its inception to its disastrous close, conformed to the law in scarcely a single particular. The securities of this administrator, who was dead, against whom this suit was brought and prosecuted, defended upon two grounds, viz.:

(1.) That a higher value was placed on intestate's interest in the business of Moran & Dowling than it was worth; that Reilly's note was taken therefor; that there was no proof that it had been paid, except the testimony of Reilly himself, which it was claimed was contradicted in material particulars by records and other writings in the case, and was deemed unreliable on account of his past mental infirmity.

(2.) That the entire amount of plaintiff's interest in the estate of his father had been consumed in his maintenance and education, for which he expressed a willingness to account in a settlement with the administrator, while on the stand as a witness in this case, and a large portion of which had been allowed by the ordinary, when returned to that court by the administrator. These defences, under the instructions of the court and the facts admitted in evidence, prevailed. · A motion to set aside the verdict in

their favor and to grant a new trial was made by the plaintiff, upon numerous grounds, which was overruled and denied, and to that decision exception was taken.

1. The court admitted the testimony of several witnesses, over the objection of plaintiff, to prove the actual value of the effects of the intestate in the firm of Moran & Dowling, for the purpose of showing that they were worth less than the price for which they were sold by the administrator. Error is assigned on this, as set forth in the 4th and 5th grounds of the motion for a new trial, as well as upon the charges based on it, as set forth in the 22d and 23d grounds of said motion, as follows:

(22.) Because the court erred in giving in charge to the jury the following request made by defendants: " The defendants are not required to account for the proceeds of any property in which the estate of Dowling had no interest, even if the proceeds of such property went into the hands of John Daley, and he charged himself with the same in his accounts as administrator of the estate of Dowling;"—there being no evidence to sustain such charge.

(23.) Because the court erred, after giving the said request, in charging the jury as follows: " That is to say, if Daley, as administrator of Dowling, received into his hands money or other thing which did not belong to the estate, and by mistake or accident charged himself with it as belonging to the estate, when it did not belong to the estate, he would not be liable for that himself, nor would his sureties be liable ;"—there being no evidence that the said Daley had received, as said administrator, money or other thing which did not belong to the estate, or of any mistake or accident.

Upon what principle an administrator or other trustee is entitled to appropriate to his own use any supposed excess in the value for which property entrusted to him may have been sold, we are unable to comprehend. It is a fundamental rule that he can make no profit for himself out of the trust estate. This principle is so well estab-

v 72-37

lished and so universally recognized—indeed so essential to the honest and proper management of property so situated, that he is never encouraged to take risks with it for his personal aggrandizement; on the contrary, he is restrained from so doing by being compelled, if his venture turns out unfortunately, to account for the full value of what is lost; and if it be successful, he is to turn over his gain to the beneficiary of the fund embarked in the enterprise. Code, §2332; 38 *Ga.*, 75 to 98; *Id.*, 452 to 458. This rule applies not only to trustees *eo nomine*, but to all persons sustaining confidential relations to others, such as executors and administrators, guardians, agents, officers, partners, attorneys, etc. *Mayor of Macon vs. Huff*, 60 *Ga.*, 221, 228, 229.

While it is not denied that the administrator is amenable to this law, it is insisted, nevertheless, that there should be a relaxation of it in favor of his sureties. But why? Is it not one of his duties to account faithfully for what comes into his hands, and do they not engage by their obligation that he shall perform this, among other duties, and if he fails to do so, is it not their undertaking to make good his default in this as in other respects? Such is the condition of their bond, without which he could never have become administrator and been invested with the power to take and manage the estate. Code, §2506.

The fine price which this property brought does not appear to have been due to the skill, fidelity and good management of the administrator, but to the advantageous and fortunate condition in which it was left by the intestate, growing out of his connection in business with Moran, and his willingness to continue in business with the party who purchased it.

We have searched this record in vain for any evidence that the return of this property by the administrator, at the price for which it sold, was the result of either "accident" or "mistake," or that he "charged himself with property as belonging to the estate, when it did not belong

to the estate." On no principle of law was this evidence competent or the request and charge given to the jury justifiable? Neither can it rest on any sound legal basis, and were there nothing else objectionable in the case, this alone would compel us to set aside the verdict and order a new trial. But there are other errors quite as fatal, and, if possible, more so.

2. It is manifest from the record that this administration has been, in almost every respect, irregular and illegal. Neither inventory nor appraisement has been made and returned, and during the whole time it continued, only two returns of the administrator's actings and doings with the estate were made to the proper court; the first nearly a year and a half after his qualification, and the second two years thereafter. There was no reason why the estate should not have been speedily wound up and turned over to the distributees; that they were minors affords no excuse for the delay; if they had no guardians, the ordinary, upon proper application made, would have appointed them; it was the fault of the administrator that the matter was so long neglected. The estate seems to have been kept in his hands for an object; he appears to have held it that he might retain the custody of the persons of the minor children eventually entitled to it, and that he might absorb not only its entire income, but corpus, in their support and education; he usurped the office of guardian, and exercised all its powers and privileges, while he seems to have regarded none of the duties and responsibilities growing out of the relation.

The court in its rulings and charges seems to have recognized his right to do so, and to have extended to him higher privileges than those accorded to a regularly appointed guardian, in the settlement of his accounts with his ward. By the law, a guardian is allowed all reasonable expenses and disbursements suitable to the circumstances of the orphan committed to his care, but the expenses of maintenance and education should not exceed the annual

profits of the estate, except by the approval of the ordinary
previously granted.   The ordinary may, in his discretion,
allow the *corpus* of the estate, in whole or in part, to be
used for the maintenance and education of the ward.
Code, §1824.   This discretion to encroach upon the *corpus*
is confided to the ordinary, and to him only ; he represents
the state, which, as *parens patriœ*, stands *in loco parentis*
to minors, and does for them what it is reasonable to sup-
pose their parent, if in life, would do, and what is for his
family's interest and honor.   The ordinary is the chosen
organ to exercise this authority, and he cannot delegate it
to another ; but it seems that, where the trustee has exer-
cised it fairly and properly without the consent of the
ordinary previously given, and where prompt and regular
annual returns of his action in that behalf have been made,
the ordinary, by his approval of such returns, may ratify
the action.   No decision of the court has gone further
than this.   15 *Ga.*, 451; 20 *Id.*, 325 ; 29 *Id.*, 582; 61 *Id.*,
452.   In *Hayne vs. Dunlap*, at the present term of the
court, this question arose incidentally, and we construed
§1824 with §2540 of the Code, and concluded that, under
the authority given in each of them, neither a guardian
nor an administrator, who had paid all just debts and claims
of every sort against the estate of his intestate, and had
left in his hands assets or property belonging to minor
heirs, for whom no guardian had been appointed, or for
whose guardianship no one applied, could appropriate to
the support of his ward or such minor heir, without the
approval of the ordinary, more than the income of his
estate.   In the 59 *Ga.*, 795, the present Chief Justice said,
in pronouncing the judgment of the court: " It appears
that the *corpus* of the estate was encroached upon by the
guardian without any order of the court therefor, which
is against the statute.   That allows it to be done on the
approval of the ordinary.   Code, §1824."   The case in
the 55 *Ga.*, 90, holds that, on a settlement between guar-
dian and ward, the guardian may show " all reasonable

disbursements and expenses suitable to the circumstances of his ward;" and if, in the series of years in which he has managed his ward's estate, he has not expended the *corpus*, he cannot be held responsible for the profits or interest or the estate, though he may have spent for his ward more than the profits and interest of a given year, in that year, or less another year; provided, during the whole period of his guardianship, he has not expended more than the entire interest, and has disbursed it reasonably and suitably to the circumstances of his ward, and legally in other respects. This judgment was also pronounced by the present Chief Justice, who seems to have steadily kept in view the restrictions upon the power of guardians and administrators to exceed the income of wards and minor heirs. This bench is unanimously of opinion that there should be no further relaxation of these prudent and salutary restraints. No case can be found which goes to the extent of shielding an administrator or guardian from responsibility, where he has shown himself so derelict to duty and so unmindful of his obligations as in the present case.

In addition to other shortcomings already noticed, this administrator kept no accounts against these minor heirs for board, tuition, nursing, clothing, etc., during the long time they remained under his care. In the last of his returns received and allowed by the ordinary, he is credited with two thousand one hundred and twenty-four dollars ($2,124), for three and a half years' board and servant hire for these three minors. The charge is unsupported by a single voucher, and not one item of this large amount is given. In returns prepared for subsequent years but never received or approved, and a portion of them not even sworn to, similar charges appear. In this way this estate, both principal and income, has been entirely absorbed, in violation, as we think, of every principle of right and justice recognized and enforced by the law.

3. That regular returns, received and approved by the ordinary, are only *prima facie* evidence in favor of the

administrator or his securities, will not be questioned; and there is just as little doubt that others, made out with a view of presenting them, but which were never received or approved by the ordinary, and some of them not even verified, while they may be used as admissions by the plaintiff in this action, are not evidence in favor of the defendants or of their principal, unless their correctness is satisfactorily proved by other testimony. It was made the duty of the administrator, by law, to keep these accounts, to support them by proper vouchers, and to present them annually for examination and approval by the proper authority, and no one but himself, and those engaged for his fidelity could suffer detriment or injury in consequence of his failure. "It is an imperative duty of an accounting party, whether an agent, a trustee, a receiver or an executor (for in this respect, as was remarked by the Lord Chancellor, in Lord Hardwick vs. Vernon, they all stand in the same situation), to keep his accounts in a regular manner, and to be always ready with his accounts; neglect of this duty is a ground for charging him with interest on balances in his hands and with cost. So a trustee and executor is bound to render every necessary information that is required of him; and he who, undertaking to give information, gives but half information, in the view of a court of chancery conceals; if he has not all the information necessary, he is bound to seek for it, and if practicable, to obtain it." 2 Spence. Eq. Jur., 921. This glaring omission of duty can scarcely be supplied by an attempt to prove a *quantum meruit* as to board, in this case, by the keeper of a hotel or fashionable city boarding-house, who, it is fair to infer, furnished much more sumptuous fare than the plaintiff is shown by this record to have received from this administrator, and by similar proof as to other things alleged, but not proved to have been furnished. If this is good law, and we entertain no doubt that it is, it follows that there was error in the charges excepted to upon this subject.

How far this omission may be supplied by proper proof

of this character, we do not fully determine. The character and quality of the board furnished, of the clothing, etc., supplied, may be proved by one acquainted with the worth of them, at the various times when furnished, but the amounts allowed as credit on this account must not exceed the annual income of plaintiff's property during his minority; and if he rendered any services to the administrator or his wife, in keeping bar or shop, or in any other way, the value of such services must be deducted from the defendants' charges for supplies. If all the income from his estate was not consumed in this way, then the defendants must likewise account for the excess.

4. We do not think that the plaintiff admitted on the stand, as claimed by defendants' counsel, his willingness to pay the demand set up by them, for his board maintenance, etc. He only expressed perfect willingness to allow the defendants such an amount as he would have been willing to have allowed the administrator for support, maintenance and education; was willing to allow him such sum as would be reasonable and proper, for what he furnished while he lived. He thought the services rendered the administrator and his family worth his food and lodging.

5. The plaintiff put in evidence an incomplete return of the defendant as an admission. This return had folded in it various receipts, accounts, etc., referred to as vouchers therein. These papers he objected to putting in as his evidence, but was compelled by the court, over his protest, to do so, upon the idea that they were a part of the admission. In this, we think, there was error. The rule upon the subject is, that when an admission is given in evidence, it is the right of the opposite party to have the whole of it, and everything connected therewith. Code, §3791. That is, when the plaintiff had given in the return as an admission, if the defendants could have shown that the enclosed papers were either a part of the admission, or were connected therewith, they might have given them in.

The plaintiff declined to do so, because he desired to assail them, which he could not have done had he made them his evidence.

6. We perceive no error in admitting testimony to sustain the credit of the witnesses for either side, whose veracity had been assailed in any of the modes pointed out in the Code.

7. We deem it unnecessary to notice other exceptions in the record. Under the circumstances, it would be improper to enter into an analysis of the testimony, and to specify more particularly than we have already done, why the verdict should be set aside, and a new trial granted, because it is contrary to law and evidence.

Judgment reversed.