WILLIAMS, ordinary, for use, *v.* ADAMS *et al.*

1. When exceptions to the report of an auditor are submitted to a jury, they must, under section 4203 of the code, return a verdict on each exception *seriatim*. Accordingly, it was error to charge the jury that if they sustained the auditor's report in full, the form of their verdict should be: "We, the jury, sustain the auditor's report in full."

2. Under section 2540 of the code, an executor or administrator has no authority to apply or pay any portion of an estate in his hands belonging to a minor who has no guardian, to the maintenance and education of the minor, without first obtaining the direction of the proper ordinary; and where an administrator, without such direction, pays or delivers to the mother of the minor money or property of the latter in his hands (the father of the minor being

alive, and the minor residing with him as a member of his family), the mother's receipt will be no protection to such administrator; nor will the subsequent approval by the ordinary of the administrator's return, including such receipt, legalize the administrator's acts in the premises.

3. Where an administrator *cum testamento annexo*, without authority of law, actually applies assets of the estate to the support of minor legatees who have no claim upon the decedent's estate for support, and the evidence renders it certain that the legatees were in want and really took and enjoyed the support thus furnished, whether a court of equity, when the administrator is called to account in an action brought upon his bond, can and will ratify such appropriation, when it involves not only the income of the legacies but the *corpus* thereof, and not only a part but the whole of the *corpus*—*Quære.*

4. Where, by a clause in a will, an attorney at law was appointed to see to its probate and execution, according to the provisions in the various items thereof, to what extent an administrator *cum testamento annexo* will be protected in acting under the advice of this attorney—*Quære.*

August 14, 1894.

Action on bond. Before Judge HUNT. Upson superior court. May term, 1893.

The suit was on the bond of J. W. Adams, administrator with the will annexed of James Adams, who died in 1873, leaving a will, whereby he gave his wife Eliza a life-interest in a fractional lot of land in Upson county, and the bridge across the Flint river with an acre of land at each end, and after her death all to be sold by his administrator and the proceeds divided as thereafter directed in the will, also a child's part of his personal property; to his daughter Louisa Martin and her children a lot of land in Upson county, and after accounting for it at a certain valuation, they to have a child's part of his personal property; to his daughters Mary E. Matthews, Frances Matthews and Sarah Williams and their children, an equal share in his personal property and the proceeds of the sale of his lands, free from the debts of the husband of Mary E. Matthews as to the portion going to her and her children; and none

of the property willed to Frances Matthews and her children to go into the possession and control of her husband John F. Matthews in any capacity whatever; and to other children equal shares in the proceeds of his personalty and the sale of his land, less certain advancements. He directed that all his real estate, not specifically devised or not sold by him while in life, be sold by his administrator; and that his administrator sell all his personalty, and, after paying expenses of administration, division to be made as thereinbefore provided. He declined to nominate an executor; and in the last item, devised to his friend James W. Green, attorney at law, $100 for drafting this will, he to see to its probate and execution according to its various provisions. The declaration alleged that the administrator had sold all the realty, except one lot, for $8,584, and realized from the personalty $14,774, and had paid out only $964.91 on debts of the estate and cost of administration, leaving $22,393.09 in his hands to be paid to the legatees. The various legatees in life and the amounts claimed to be due each were set forth.

Defendants pleaded not indebted, and the following: John F. Matthews was regularly appointed trustee for his wife and children, by the chancellor whose circuit embraced the county in which they then lived. Before this the administrator advanced to Mrs. Matthews and her children a mule, provisions and money, which was necessary to be done in order to support the family, and without which advancement they could not have made a living; and defendants ask the court, in the exercise of its equitable powers, to ratify such advancement. After said trustee was appointed, the administrator paid to him the full distributive share, and more, of Mrs. Matthews and her children. The children of Sarah and B. R. Williams were minors and without an appointed guardian, but B. R. Williams and his wife were the

natural guardians; and to them the administrator paid the full distributive share of Sarah Williams and her children, and overpaid it by $300. They were without means of support, and advancements to them were necessary; and defendants pray that these advancements be ratified. A similar plea is made as to the children of Laura C. and William Martin, and as to the children of Mary E. and Green B. Matthews; and that the Martin children and the children of Mary E. and Green B. Matthews and Mary E. Matthews brought suit against the administrator for their interest in the estate, and the case was settled by paying $200 to their counsel. Also, that John F. Matthews invested, as trustee, the money paid to him in land which he now owns as trustee, and on which he and his family live. And that in all these matters the administrator acted under and by the direction of James W. Green.

The case was referred to an auditor, and to his report exceptions were filed by plaintiff. The exceptions material here are on matters of fact, alleging in brief, that the auditor ought not to have charged the children with the supplies and money furnished to their mothers, the evidence not showing how much supplies were furnished, and how much money, and whether either or both were actually necessary and used for their benefit; that the evidence did not show that Matthews and wife, or Williams and wife, or Martin and wife, were not able to support their children, or that it became necessary for the administrator to aid in their support; and that the auditor erred in finding that the children had been fully paid, etc. The jury found a general verdict sustaining the auditor's report, and plaintiff's motion for a new trial was overruled. The motion was upon the grounds that the verdict was contrary to law and evidence; that the jury failed to pass upon each exception separately;

v 94-18

and that the court erred in charging as stated in the first head-note, and in the instructions following:

"If the administrator has paid all the debts of the estate and just claims against it, and no one would apply to be guardian, I charge that if they had no guardian and the administrator in good faith paid out money or property for their support, in excess of the interest on their estate, he is protected by the law. And if the ordinary subsequently approved the return of the administrator, it in effect is an approval of the administrator's acts and renders his acts legal; but before you would allow that, it must appear what the administrator paid out was for the education and maintenance of the minors, and it should be allowed to that extent only.

"I charge you that if the mother of these children gave her receipt for money or property of a kind which could reasonably be used in the maintenance and education of her children, the plaintiffs in this proceeding are concluded, for the reason the auditor has so found and no exception is taken to that. Hence if it so appears that such receipts were given, it will be your duty to find, to the extent of those receipts, that the money and effects were paid to the plaintiffs, unless this fact is rebutted by other evidence.

"If the plaintiffs claim that anything is due them, the burden is upon them to show how much is due."

J. M. MATHEWS, for plaintiff. HALL & HAMMOND, A. M. SPEER and M. H. SANDWICH, for defendants.

LUMPKIN, Justice.

This was a somewhat complicated case, and the questions brought to this court for review arose upon the trial of exceptions to an auditor's report. The material facts are stated by the reporter. The first and second head-notes indicate the controlling points in the case, upon which our judgment of reversal is based. In the third and fourth head-notes, we have formulated ques-

tions which may arise on the next hearing, but which are not now decided.

1. The court, among other things, instructed the jury that if they sustained the auditor's report in full, the form of their verdict should be : " We, the jury, sustain the auditor's report in full." There being numerous exceptions to be passed upon by the jury, this charge was in plain violation of the express provision contained in section 4203 of the code, which declares that when exceptions to the report of an auditor are submitted to a jury, they "shall return a verdict on each exception *seriatim*." We are therefore compelled to hold that this charge was erroneous.

2. The auditor, in effect, reported that the administrator with the will annexed had the right to pay and deliver to the mothers, respectively, of the minors interested in the estate, all of the money and property coming to the minors under the will of James Adams, in order to enable the mothers to apply the same to the maintenance and education of the minors. The view of the law thus entertained by the auditor seems to have been approved by the trial judge, and the main issue contested before the jury was whether or not, in point of fact, the money and property turned over to the mothers of the children was actually necessary for their maintenance and education, and was actually used for this purpose.

Under the provisions of section 2540 of the code, an administrator has no authority to apply or pay, directly or indirectly, any portion of an estate in his hands belonging to a minor who has no guardian to the maintenance and education of the minor, without first obtaining the direction of the proper ordinary. In the absence of such direction, the payment to the mother of a minor would be totally unauthorized, especially so when it appears that the minor's father is alive and the

minor is residing with him as a member of his family. It follows that the receipts given by the mothers to the administrator for the shares of their children, respectively, in the estate of Adams, were no legal protection at all to the administrator.

These plain rules of the law were recognized by the able counsel who appeared for him; but it was insisted that the approval by the ordinary of his returns, including the receipts just mentioned, legalized and made valid the administrator's acts in the premises. We cannot concur in this view. The cases of *Rolfe* v. *Rolfe*, 15 *Ga.* 451, and 20 *Ga.* 325, and *Smith* v. *Hilly*, 29 *Ga.* 582, all of which were decided before the code, and *Cook* v. *Rainey*, 61 *Ga.* 452, and others to the like effect decided since the adoption of the code, do not sustain the contention of the defendants in error in this respect. These cases do, in effect, hold that, by approving the regular annual returns of a guardian showing on their face that the expenses of maintaining and educating the ward had exceeded the income of his estate, the ordinary consented to the expenditure of more than the annual profits for these purposes. But a careful examination of these cases will show that the money expended by the guardian in each instance was directly disbursed by him for the ward's maintenance and education. In other words, the returns showed unequivocally on their faces that the money of the ward was in fact used by the guardian for these identical purposes. These cases, and others like them, have gone quite far enough in holding that a guardian will be protected in encroaching upon the *corpus* of the ward's estate under these circumstances, and we are not disposed to extend it further. Granting, however, for argument's sake, that the doctrine of these cases is applicable to a case arising under section 2540 of the code, we are quite certain that an administrator, in order to obtain the protection afforded

by this section, must see to it that the money is expended properly and judiciously for the minor's support and education, and for nothing else. He cannot obtain this protection by turning over the minor's estate in bulk to any other person, upon the idea that so doing is necessary to the minor's maintenance and education, and that the person to whom he turns the estate over will properly dispose of it for this purpose. To sanction such a rule as this would simply put it within the power of an administrator, having in his hands property belonging to a minor, to deliver it to whomsoever he pleased, and thus avoid the responsibility which the law puts upon him. Surely such a thing was never contemplated by the law-making power, or by this court in any of its decisions.

3. But suppose the administrator, though without authority of law, did turn over to the mothers of these children their shares in the estate of James Adams, and can affirmatively show that the children were actually in want and were actually supported or educated out of the means thus furnished; will a court of equity, at the instance of the administrator and the sureties upon his bond, ratify such an appropriation of the children's property, the same involving, not only the income, but the entire *corpus* of their shares in the estate? We leave this question open for further investigation.

4. Another question which seems to have cut no figure in the trial now under review, but which may become an important one at the next hearing, is, whether or not an administrator with the will annexed will be protected in what he does under the advice of an attorney at law appointed by the will to see to its probate and execution. As no ruling was made by the court below on this question, we also leave it open, without intimating any opinion concerning it.            *Judgment reversed.*